# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOLD ST. PETERS, L.P., <br><br> Plaintiff, <br><br> v. <br><br> BOLD ON BOULEVARD LLC, RCG BOLD GP LLC, BOLD APARTMENTS, LLC, RCG BOLD 1 LLC, RCG BOLD 2 LLC, RCG BOLD 3 LLC, RCG BOLD 4 LLC, AND RCG BOLD 5 LLC, AND NACHMAN Y. TEREN, <br><br> Defendants. | C.A. No. 24-821-JLH |

## DEFENDANTS' BRIEF IN SUPPORT OF RULE 12(B)(6) PARTIAL MOTION TO DISMISS DEFENDANT BOLD ST. PETERS, L.P.'S CLAIMS

**K&L GATES LLP**
Steven L. Caponi (No. 3484)
600 N. King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steven.caponi@klgates.com

**BELL NUNNALLY & MARTIN LLP**
Kartik R. Singapura
Mason G. Jones
Nathan Cox
2323 Ross Avenue, Suite 1900
Dallas, TX 75201
Phone: (214) 740-1400
ksingapura@bellnunnally.com
mjones@bellnunnally.com
ncox@bellnunnally.com

*Attorneys for Defendants*

Dated: July 22, 2024

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENTS AND AUTHORITIES..................................................................................2

    A. Standard Under Rule 12(b)(6). ..................................................................................2

    B. The Operating Agreement forecloses PE Member's misrepresentation-based claims. ........................................................................................................................3

        1. PE Member cannot establish justifiable reliance because the Operating Agreement discloses and directly contradicts the alleged misrepresentations and omissions on which PE Member purportedly relied. ............................................................................................................3

        2. PE Member disclaimed reliance on any purported extra-contractual misrepresentations or omissions. ..........................................................5

    C. PE Member acquiesced to the Nominee Agreement and TIC Structure, barring their claims (Counts I- XI). ........................................................................................6

    D. PE Member cannot bootstrap its contract claim into claims for fraud, fraudulent concealment, equitable fraud, and intentional misrepresentation (Counts V-VIII). .........................................................................................................7

    E. PE Member's fiduciary duty claim is preempted by its breach of contract claim (Count IV). .........................................................................................................9

    F. PE Member's declaratory judgment claim is redundant and duplicative of its breach of contract claim (Count III). .......................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abry P'rs V, L.P. v. F & W Acq. LLC*,
  891 A.2d 1032 (Del. Ch. 2006) ................................................................................................6, 7

*Arcelik, A.S. v. E.I. Du Pont de Nemours & Co.*,
  619 F. Supp. 3d 473 (D. Del. 2022), *aff'd sub nom. Arcelik A.S. v. EI DuPont
  de Nemours & Co.*, No. 22-2634, 2023 WL 3862506 (3d Cir. June 7, 2023) ...........................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................................3

*BAE Sys. N. Am. Inc. v. Lockheed Martin Corp.*,
  2004 WL 1739522 (Del. Ch. Aug. 3, 2004) .............................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................2, 3

*Black Horse Capital, LP v. Xstelos Holdings, Inc.*,
  2014 WL 5025926 (Del. Ch. Sept. 30, 2014) .........................................................................5, 7

*CompoSecure, L.L.C. v. CardUX, LLC*,
  2018 WL 660178 (Del. Ch. 2018) ...........................................................................................13

*Davis v. 24 Hour Fitness Worldwide, Inc.*,
  75 F. Supp. 3d 635 (D. Del. 2014) .............................................................................................4

*Glob. Discovery Biosciences Corp. v. Harrington*,
  No. 2022-1132-SG, 2023 WL 8295946 (Del. Ch. Dec. 1, 2023) ...............................................4

*Iotex Commc'ns, Inc. v. Defries*,
  1998 WL 914265 (Del. Ch. Dec. 21, 1998) .............................................................................10

*Klaassen v. Allegro Dev.*,
  106 A.3d 1035 (Del. 2014) ........................................................................................................8

*Libeau v. Fox*,
  880 A.2d 1049 (Del. Ch. 2005), *aff'd in pertinent part,* 892 A.2d 1068 .................................5

*Nemec v. Shrader*,
  991 A.2d 1120 (Del. 2010) ......................................................................................................11

*Weyerhaeuser Co. v. Domtar Corp.*,
   204 F. Supp. 3d 731 (D. Del. 2016), *subsequently aff'd*, 721 Fed. Appx. 186
   (3d Cir. 2018) ........................................................................................................7, 8

**Other Authorities**

FED. R. CIV. P. 8(a)(2)..................................................................................................................2

FED. R. CIV. P. 12(b)(6) ...............................................................................................................2

Defendants Bold on Boulevard LLC (the "Company"), RCG Bold GP LLC ("RCG" or "Common Member"), Bold Apartments, LLC, RCG Bold 1 LLC, RCG Bold 2 LLC, RCG Bold 3 LLC, RCG Bold 4 LLC, and RCG Bold 5 LLC (collectively, the "TICs"), and Nachman Y. Teren submit this brief in support of its Rule 12(b)(6) Motion to Dismiss [ECF --] (the "Motion') the claims asserted by Plaintiff Bold St. Peters, L.P. ("Plaintiff" or "PE Member").

## I.  INTRODUCTION

PE Member's lawsuit presents nothing more than the endgame in its thinly veiled loan-to-own scheme. Common Member and PE Member are partners in a multi-family investment apartment complex in St. Peters, Missouri called "Bold on Boulevard LLC" (the "Complex"). Common Member is the Managing Member of the Complex. PE Member is the former owner of the Complex. Upon the sale of the Complex, PE Member retained a preferred equity interest, and a $15 Million debt position. The business relationship between Common Member (as the managing member of the complex) and PE Member (as the former owner and preferred equity member) is memorialized in a single operating agreement.

For over a year now, Plaintiff has threatened illegitimate reasons to place Common Member in "default" under the parties' operating agreement. Such a default would squeeze Common Member out of its managerial role and jeopardize its future financial positions. Now culminating in the present litigation, PE Member complains of the Company's corporate structure and tenancy in common with the TIC's.[1] PE Member knew about and acquiesced to this TIC structure; and yet, claims that the TIC structure alone constitutes a "major decision" and event of default under the operating agreement. Indeed, while simultaneously arguing Common Member

---

[1] The TICs are Bold Apartments, LLC, RCG Bold 1 LLC, RCG Bold 2 LLC, RCG Bold 3 LLC, RCG Bold 4 LLC, and RCG Bold 5 LLC.

"actively concealed" the Nominee Agreement and TIC structure (*see, e.g.*, Compl. ¶141) Common Member attached the Operating Agreement which contains an organization chart that expressly disclosed the Nominee Agreement and TIC structure. ECF No. 1-1 at 117, Schedule 8.2(g). For similar reasons, Bold St. Peters cannot credibly argue it justifiably relied on an alleged misrepresentation related to the Nominee Agreement and TIC structure when it was expressly disclosed in the Operating Agreement, thus negating an essential element of its fraud and misrepresentation claims.

## II.      ARGUMENTS AND AUTHORITIES

### A.      Standard Under Rule 12(b)(6).

A pleading must contain "a short, plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff may support its claim for relief with any set of facts consistent with the allegations in the complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The terms of Rule 12(b)(6) authorize the dismissal of a complaint that fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

A motion to dismiss should be granted when the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not the equivalent of a probability requirement, but the standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Thus, to survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When plaintiff has "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at

570; *accord Iqbal*, 556 U.S. at 678.

### B. The Operating Agreement forecloses PE Member's misrepresentation-based claims.

PE Member's fraud, fraudulent concealment, equitable fraud/negligent misrepresentation, and intentional misrepresentation causes of action (Counts V-VIII) rely on the same operative allegations. That is, "Common Member and Teren actively concealed . . . the Nominee Agreement" and TIC structure from PE Member who "justifiably relied on the representations of the Common Member and Teren" by entering into the Operating Agreement. *See, e.g.*, Compl. ¶¶ 113, 116.

The *Operating Agreement attached to Plaintiffs' Verified Complaint* the very Nominee Agreements and TIC structure that Bold St. Peters's now boldly claims Defendants were actively concealing and representing would not occur. ECF No. 8-1 at 72 (Schedule 8.2(g)). Thus, Bold St. Peters's fraud and misrepresentation claims fail because its own pleading negates the justifiable or reasonable reliance element of its fraud and misrepresentation claims. Additionally, all of Bold St. Peters's claims related to the Nominee Agreement and TIC structure fail because it acquiesced to the arrangement through executing the Operating Agreement reflecting the Nominee Agreement and TIC structure.

> 1. PE Member cannot establish justifiable reliance because the Operating Agreement discloses and directly contradicts the alleged misrepresentations and omissions on which PE Member purportedly relied.

The Complaint accurately recognizes Counts V-VIII each require a showing of justifiable reliance on the alleged misrepresentation that Common Member would not enter into the Nominee Agreement or TIC Structure. Compl. at ¶¶ 111 and 113 (fraud), 121 (fraudulent concealment), 129 (equitable fraud/negligent misrepresentation), and 138 (intentional misrepresentation).[2] PE

---

[2] *See, e.g., Glob. Discovery Biosciences Corp. v. Harrington*, No. 2022-1132-SG, 2023 WL 8295946, at *5 (Del. Ch. Dec. 1, 2023) (justifiable reliance s necessary element of fraud claim);

3

Member, however, cannot establish justifiable reliance because the plain language of the Operating Agreement directly contradicts the purported misrepresentations and omissions that PE Member claims it relied on.

Delaware law upholds the strong public policy in favor of freedom of contract and holding parties to the bargain they struck.³   Springing from this principle is the rule that under Delaware law, justifiable reliance cannot be established when an oral promise was made that directly conflicts with the plain language of a subsequent written agreement covering the same subject matter. *Black Horse Capital, LP v. Xstelos Holdings, Inc.,* 2014 WL 5025926, at *22 (Del. Ch. Sept. 30, 2014).

Here, PE Member executed the Operating Agreement which expressly shows the intended TIC structure and execution of the Nominee Agreement in Schedule 8.2(g) of the Operating Agreement:

---

*Arcelik, A.S. v. E.I. Du Pont de Nemours & Co.*, 619 F. Supp. 3d 473, 484 (D. Del. 2022), *aff'd sub nom. Arcelik A.S. v. EI DuPont de Nemours & Co.*, No. 22-2634, 2023 WL 3862506 (3d Cir. June 7, 2023) (negligent misrepresentation); *Davis v. 24 Hour Fitness Worldwide, Inc.*, 75 F. Supp. 3d 635, 640 (D. Del. 2014).

³   *See Libeau v. Fox,* 880 A.2d 1049, 1056-57 (Del. Ch. 2005), *aff'd in pertinent part,* 892 A.2d 1068 ("When parties have ordered their affairs voluntarily through a binding contract, Delaware law is strongly inclined to respect their agreement, and will only interfere upon a strong showing that dishonoring the contract is required to vindicate a public policy interest even stronger than freedom of contract. Such public policy interests are not to be lightly found, as the wealth-creating and peace-inducing effects of civil contracts are undercut if citizens cannot rely on the law to enforce their voluntarily-undertaken mutual obligations.")



Page 72 of ECF No. 8-1 (Schedule 8.2(g) to Operating Agreement). Indeed, the above disclosure, as part of the overall deal structure, is defined as the "Organizational Chart" for the Company by the Operating Agreement.

The supposed misrepresentations and omissions serving as the foundation of PE Member's Counts V-VIII are directly contradicted by the express, unambiguous terms of the parties' written Agreement – i.e., the Operating Agreement – and PE Member's reliance on any such misrepresentations and omissions is not justified as a matter of law.

        2.    PE Member disclaimed reliance on any purported extra-contractual misrepresentations or omissions.

Bold St. Peters claims that it relied on representations from the Common Member and Teren that they would not enter the Nominee Agreement or TIC structure. *See, e.g.*, Compl. ¶¶ 109–110, 115. Even if it were true (it isn't) and even if that did constitute a prohibited transfer under the Operating Agreement (it doesn't), PE Members fraud and misrepresentation claims (Counts V-VIII) still fail because Bold St. Peters disclaimed reliance on any purported extra-contractual misrepresentations or omissions through the Operating Agreements integration clause (Section 20.14) and anti-reliance clause (Section 17.5).

5

Courts in Delaware are clear: "[A] party cannot promise, in a clear integration clause of a negotiated agreement, that it will not rely on promises and representations outside of the agreement and then shirk its own bargain in favor of a 'but we did rely on those other representations' fraudulent inducement claim." *Abry P'rs V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1057 (Del. Ch. 2006).

Here, there are multiple specific provisions whereby Bold St. Peters disclaimed reliance on any alleged misrepresentations from the Common Member *and* that the Operating Agreement is the "final and complete agreement" between the parties which explicitly included a copy of the organizational chart that discloses the Nominee Agreement and TIC structure. Operating Agreement at §§ 17.5, 20.14. Accordingly, Bold St. Peters's claims also fail for lack of reliance based on the anti-reliance and integration clauses. *Abry P'rs V, L.P.*, 891 A.2d at 1057; *Black Horse Capital, LP v. Xstelos Holdings, Inc.*, No. CIV.A. 8642-VCP, 2014 WL 5025926, at *24 (Del. Ch. Sept. 30, 2014).

### C. PE Member acquiesced to the Nominee Agreement and TIC Structure, barring their claims (Counts I- XI).

For similar reasons, all of Bold St. Peters's claims (including breach of contract and declaratory judgment) related to the Nominee Agreement and TIC structure fail because it acquiesced to the arrangement through executing the Operating Agreement reflecting the Nominee Agreement and TIC structure.

"Acquiescence occurs where a plaintiff 'has full knowledge of his rights and the material facts and (1) remains inactive for a considerable time; or (2) freely does what amounts to recognition of the complained of act; or (3) acts in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved.'" *Weyerhaeuser Co. v. Domtar Corp.*, 204 F. Supp. 3d 731, 740 (D. Del. 2016), subsequently aff'd, 721 Fed. Appx. 186

6

(3d Cir. 2018) (quoting *Klaassen v. Allegro Dev.*, 106 A.3d 1035, 1047 (Del. 2014)). "For the defense of acquiescence to apply, conscious intent to approve the act is not required, nor is a change of position or resulting prejudice." *Klaassen*, 106 A.3d at 1047.

Under both the first two avenues, Bold St. Peters acquiesced to the Nominee Agreement and TIC structure. First, by executing the Operating Agreement which explicitly disclosed—and Bold St Peters thereby recognized—the "complained of act" (i.e., the Nominee Agreement and TIC structure). *Weyerhaeuser Co.*, 204 F. Supp. 3d at 740. Second, whether going by the execution of the Operating Agreement or when Bold St. Peters supposedly discovered the Nominee Agreement and TIC structure, Bold St. Peters remained inactive for over a year (*i.e.,* a considerable time). *Id.* Specifically, the parties executed the Operating Agreement December 30, 2022. Compl. ¶ 17. However, even ignoring the explicit disclosure in the Operating Agreement, Bold St. Peters claims it discovered the Nominee Agreement and TIC structure in May 2023. *Id.* ¶ 44. Then, Bold St. Peters waited over a year to file suit on June 14, 2024 and simultaneously claimed the Nominee Agreement and TIC structure was such an emergent situation to warrant an expedited proceeding in state court to remove the Common Member. *Id.* at 1; Mot. to Expedite, ECF No. 8-2. Accordingly, waiting a year to a year-and-a-half to enforce its rights for an alleged breach of contract and fraudulent conduct that is supposedly emergent, constitutes "remain[ing] inactive for a considerable time." *Weyerhaeuser Co.*, 204 F. Supp. 3d at 740.

  **D.** **PE Member cannot bootstrap its contract claim into claims for fraud, fraudulent concealment, equitable fraud, and intentional misrepresentation (Counts V-VIII).**

PE Member's claims for declaratory judgment and breach of contract (Cause of Action Nos. 1-3) rely on a common set of allegations that: (1) Common Member breached the Operating agreement by executing the Nominee Agreement and effectuating the TIC structure; and (2)

7

Common Member breached the Operating Agreement by virtue of the lender default. Common Member either breached the Operating Agreement or it didn't. But in relying on the same common nucleus of operative facts and allegations, PE Member artfully recasts these basic contractual allegations as fraud, fiduciary duty, and equitable claims. Indeed, PE Member recites identical allegations and bootstraps unnecessary claims for fraud, breach of fiduciary duty, fraudulent concealment, equitable fraud, and intentional misrepresentation. PE Member's claims craftily recast the same allegations as new claims:

- <u>Count V Fraud</u>: In sum, Common Member committed fraud by representing that "no transfer would be permitted" and by effectuating the TIC structure without consulting PE Member (Complaint ¶ 108-117);

- <u>Count VI Fraudulent Concealment</u>: In sum, Common Member fraudulently concealed its plan to enter into the TIC structure after execution of the Operating Agreement (Complaint ¶ 118-125);

- <u>Count VII Equitable Fraud/Negligent Misrepresentation</u>: In sum, Common Member committed fraud by representation that "no transfer would be permitted" and by effectuating the TIC structure (Complaint ¶ 126-134);

- <u>Count VIII Intentional Misrepresentation</u>: In sum, Common Member committed an intentional misrepresentation by agreeing that "no transfer would be permitted" and by effectuating the TIC structure (Complaint ¶ 126-134).

Each of the foregoing allegations relies on the same common theme – the terms of the Operating Agreement. In each allegation, PE Member reiterates that Common Member's failure to comply with the terms of Operating Agreement is the source for its alleged fraud claims:

> "As expressed by the plain terms of the Operating Agreement and the parties' course of dealing, as a material inducement to enter into the Operating Agreement and related Investment Documents, Common Member and Teren represented to Bold St. Peters that they would not effectuate a Transfer."

[See Complaint ¶ 109; 119; 127; 136]

8

> "As expressed by the plain terms of the Operating Agreement and the parties' course of dealing, Bold St. Peters justifiably relied on the representations of Common Member and Teren that no Transfer would be permitted in entering to the Operating Agreement"

[*See* Complaint ¶ 113; 121; 129; 138]

Under Delaware law, PE Member's recharacterization of contract claims as fraud claims constitutes impermissible bootstrapping. A plaintiff "cannot 'bootstrap' a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations." *Iotex Commc'ns, Inc. v. Defries*, 1998 WL 914265, at *4 (Del. Ch. Dec. 21, 1998). Couching Common Member's alleged failure to comply with the Operating Agreement as a fraudulent act or intentional misrepresentation is "*exactly the type of bootstrapping this Court will not entertain*." *BAE Sys. N. Am. Inc. v. Lockheed Martin Corp.*, 2004 WL 1739522, at *8 (Del. Ch. Aug. 3, 2004). This dispute concerns a breach of contract issue – whether Common Member is in default of the Operating Agreement. The Court should not entertain superfluous and bootstrapped claims that merely recast contractual allegations as fraud.

### E.     PE Member's fiduciary duty claim is preempted by its breach of contract claim (Count IV).

Similarly, PE Member's fiduciary duty claims are preempted by the contractual claims. Under Delaware common law, contract obligations generally preempt overlapping fiduciary claims that arise out of the same facts. *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010). In *Nemec*, the leading case on contractual preemption of fiduciary claims, the Delaware Supreme Court held:

> It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim. In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous.

9

*Nemec*, 991 A.2d at 1129.

This well-settled principle outlined in *Nemec* applies in preempting PE Member's fiduciary duty claims against Common Member. PE Member pleads that Common Member breached the Operating Agreement by executing the Nominee Agreement and effectuating the TIC structure. While relying on an identical factual basis, PE Member also claims that Common Member breached its fiduciary duty by "placing its self-interests over those of Bold St. Peters." (Complaint ¶ 106). PE Member pleads that Common Member breached the Operating Agreement by virtue of the Lender Default; while also recasting the same issue as a breach of fiduciary claim. (Complaint ¶ 107). PE Member's fiduciary duty claims are superfluous and should be dismissed as such.

Artfully pleading fraud (amongst other claims) does not foreclose the fact that this dispute concerns the interpretation and analysis of the Operating Agreement, and nothing more. This Court should not permit PE Member to recast its contractual claims are fraud and fiduciary duty claims. Such claims are superfluous, unnecessary, and impermissible under Delaware law. The Court should dismiss PE Member's claims for fraud, breach of fiduciary duty, fraudulent concealment, equitable fraud, and intentional misrepresentation.

### F. PE Member's declaratory judgment claim is redundant and duplicative of its breach of contract claim (Count III).

In Count II, PE Member alleges that Common Members execution of the Nominee Agreement and performance of the TIC structure constitutes a breach of the Operating Agreement. (Complaint ¶ 86). In the same count, PE Member alleges that the "lender default" constitutes a breach of the Operating Agreement. (Complaint ¶ 87). Under both theories of breach, PE Member alleges that it is entitled to initiate a change in control, and that Common Member has refused to acquiesce to PE Member's change-in-control demands. (Complaint ¶ 88-90).

10

In Count III, PE Member simply recasts its breach of contract claims as requests for declaratory judgment. In sum, PE Member seeks the following judicial declarations—each of which would be foreclosed by the Court's ruling on its breach of contract claim (Count II):

- Common Member and the Company lacked authority under the Operating Agreement to execute and implement the TIC Restructure Transaction and related Nominee Agreement without the written consent of Bold St. Peters. (Compliant ¶ 96);

- Common Member and the Company did not obtain Bold St. Peters's written consent prior to execution and implementation of the TIC Restructure Transaction and related Nominee Agreement. (Complaint ¶ 97);

- Bold St. Peters does not consent to the execution and implementation of the TIC Restructure Transaction and related Nominee Agreement. (Complaint ¶ 98); and

- The Company and Common Member's execution and implementation of the TIC Restructure Transaction and related Nominee Agreement constitute a breach of the Operating Agreement. (Complaint ¶ 99).

Put simply, it is unnecessary for this Court to grant a declaratory judgment as to the interpretation of a contract where the Court's decision as to which party was in breach serves the same end. *CompoSecure, L.L.C. v. CardUX, LLC*, 2018 WL 660178, at *44 (Del. Ch. 2018). In the present case, PE Member asks the court to rule that Common Member breached the Operating Agreement and seeks several judicial declarations that Common Member's actions constituted a breach of the Operating Agreement. Therefore, the declaratory judgment claim (Count III) is redundant, unnecessary, and should be dismissed.

| | |
|---|---|
| Dated: July 22, 2024 | **K&L GATES LLP** |
| | */s/ Steven L. Caponi* |
| | Steven L. Caponi (No. 3484) |
| | 600 N. King Street, Suite 901 |
| | Wilmington, DE 19801 |
| | Phone: (302) 416-7000 |
| | steven.caponi@klgates.com |

11

**BELL NUNNALLY & MARTIN LLP**
Kartik R. Singapura
Mason G. Jones
Nathan Cox
2323 Ross Avenue, Suite 1900
Dallas, TX 75201
Phone: (214) 740-1400
ksingapura@bellnunnally.com
mjones@bellnunnally.com
ncox@bellnunnally.com

*Attorneys for Defendants*